IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CR218 |
| | ) | |
| v. | ) | |
| | ) | |
| FREDERICK ALLEN MCCORMICK, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |
| | ) | |

The defendant is before the court for resentencing after remand from the United States Court of Appeals for the Eighth Circuit (hereinafter, "Eighth Circuit"). This memorandum opinion supplements findings made on the record at a sentencing hearing on December 20, 2007.

### I. FACTS

Defendant Frederick Allen McCormick was charged in 2004 with possession of pseudoephedrine, knowing and having reasonable cause to believe it would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2). Filing No. 19, Superseding Indictment. By statute, the crime is punishable by imprisonment for up to 20 years. 21 U.S.C. § 841(c). Pursuant to a plea agreement, McCormick entered a plea of guilty to the charge. Filing Nos. 32, Plea Agreement (hereinafter, "Plea Agr.") 29, Minute Entry, Change of Plea Hearing. In his petition to enter a plea of guilty, McCormick stated, "I purchased pseudoephedrine for another person so they could manufacture methamphetamine." Filing No. 31, Petition to Enter a Plea of Guilty at 14. In the plea agreement, the parties agreed that McCormick's cooperation was anticipated and the government agreed that, at its discretion, it would consider filing either a motion for

departure under U.S.S.G. § 4K1.1 or a motion for reduction of sentence under Fed. R. Crim. P. 35(b). Filing No. 32, Plea Agreement at 2. McCormick agreed that he should be held responsible for between 40 and 70 grams of pseudoephedrine. *Id.* at 5.

In preparation for the sentencing, the United States Office of Probation (hereinafter, "the Probation Office") prepared a Presentence Investigation Report (hereinafter, "PSR"). Filing No. 42, Revised PSR (Sealed). The prosecutor's version of the offense was set forth in the PSR as follows:

> On February 17, 2004, OPD [Omaha Police Department] responded to reports of a group of people buying large quantities of pseudoephedrine. The van in which McCormick and three others were riding was stopped based on that report and the description and license number of the van. The defendant was seen discarding a baggie which contained .3 grams of methamphetamine. The defendant was Mirandized and confessed to having been buying methamphetamine for the driver of the van, John 'Ted' Beaman, believing that he was going to receive methamphetamine for doing so and believing that the pseudo would be used to make methamphetamine. He claimed not to know who was going to make the drugs, or where they would be made. He admitted that the drugs he discarded were his and that the source of the drugs was not Beaman and he would not identify the person in Council Bluffs, who gave them to him. OPD recovered 49.92 grams of pseudoephedrine from the van.

*Id.*, PSR at 5.

In the PSR, the Probation Office identified U.S.S.G. § 2D1.11 as the applicable Guideline provision for the violation and determined that McCormick's base offense level should be 28. *Id.* at 4, 19. The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 25. *Id.* at 7. The Probation Office determined that McCormick had ten criminal history points, resulting in a criminal history category of V. *Id.* at 8-11. It assessed eight criminal history points for misdemeanor convictions for criminal mischief, 4th degree-

theft, operating a vehicle without consent, driving while barred, and a felony conviction for possession of a controlled substance. *Id.* Two additional points were assessed for commission of the instant offense within two years of release from imprisonment on another sentence. *Id.* at 11. Based on ten criminal history points, McCormick had a criminal history category of V. *Id.* at 12. At total offense level 25 and criminal history category V, his guideline sentencing range was 100 to 125 months. *Id.* at 19. The Probation Office reported in the PSR that the defendant had completed inpatient drug treatment at Nova Therapeutic Center in Omaha and had been released to Oxford House in Council Bluffs, Iowa. *Id.* at 4.

On June 24, 2004, the Supreme Court issued its opinion in *Blakely v. Washington,* 542 U.S. 296 (2004). In that case, the Supreme Court found that the State of Washington's mandatory sentencing guidelines were unconstitutional. *Id.* at 305. This court interpreted the *Blakely* decision to mean that the United States Sentencing Guidelines ("Guidelines") could be constitutionally applied as long as facts enhancing a sentence were set forth in the indictment and proved beyond a reasonable doubt to a jury or admitted by the defendant. *See United States v. Terrell,* — F. Supp. —, —, 2004 WL 1661018, *5 (D. Neb. July 22, 2004). Because the defendant had admitted to the quantity alleged in the superseding indictment, the court found that the mandatory Guidelines could be constitutionally applied to determine McCormick's sentence under its interpretation of *Blakely*.

At the original sentencing hearing on January 7, 2005, McCormick moved for a downward departure for overstatement of criminal history. Filing No. 43, Transcript of Sentencing Hearing (hereinafter, "Sent. Hr'g. Tr.") at 21. The court denied the motion,

3

noting that McCormick had several charges pending in state court for which points had not been assessed and stating that if it were not "for all these extra entanglements, I would give him the motion for departure, but he has too much history for me." *Id.* at 25. The court determined that McCormick's offense level was 25, his criminal history category was V, and his Guideline sentencing range was 100 to 125 months. *Id.* at 20. McCormick was sentenced under the Guidelines to a term of imprisonment of 100 months. *Id.* at 29.

On January 12, 2005, five days after McCormick was sentenced, the United States Supreme Court issued its decision in *United States v. Booker,* 543 U.S. 220 (2005). The Supreme Court found the federal sentencing Guidelines unconstitutional as they had been applied, but determined the constitutional infirmity could be remedied if the Guidelines were advisory. *Id.* at 226-27, 245. McCormick appealed his sentence as unconstitutional under the then-mandatory Guidelines. The Eighth Circuit Court of Appeals found this court erred in applying the mandatory Guidelines and remanded for resentencing under *Booker.* Filing No. 47; *United States v. McCormick,* 142 Fed. App'x 957 (8th Cir. 2005).

At the resentencing hearing on February 2, 2006, the parties indicated that it was unlikely that any motions for reduction for substantial assistance would be filed by the government. Filing No. 64, Transcript (hereinafter, "Resentencing Hr'g Tr.") at 3. McCormick again moved for a downward departure for overstatement of criminal history category. *Id.* at 10. One of the outstanding charges pending against McCormick at the time of the original sentencing had been dismissed, and state court records were not clear with respect to resolution of the other outstanding charge. *Id.* at 11-12. McCormick argued that fully half McCormick's eight assessed criminal history points were for driving offenses and that he had only one felony conviction, for possession of a controlled substance. *Id.*

4

McCormick also argued that the court should consider his cooperation and the disparity in the sentencing of McCormick's accomplices when considering the sentencing factors under 18 U.S.C. § 3553. *Id.* at 15-16. The parties agreed that one of McCormick's accomplices had been charged in state court and sentenced to no more than 24 months and the other two accomplices were never charged.[1] *Id.* at 15, 18-20. McCormick argued for a sentence of 24 months. *Id.* at 18.

The government objected to any consideration of McCormick's accomplices' state court sentences, but admitted that the only reason that McCormick, and not Beaman, had been charged in federal court was that McCormick confessed and Beaman did not. *Id.* at 21-22. The prosecutor stated, "My hope was that we could quickly make a deal with Mr. McCormick and indict Mr. Beaman." *Id.* at 22. Beaman, however, entered a plea in state court and was never indicted in federal court. *Id.* There does not appear to be any dispute that McCormick made a proffer and gave reliable information to the government and that the government's failure to utilize information was outside of the defendant's control. *Id.* at 16, 21-23, 31.

The defendant again moved for downward departure for overstatement of criminal history under U.S.S.G. § 4A1.3. The court granted the motion finding that McCormick's criminal history category should be IV, not V. *Id.* at 26-27. At criminal history category IV and total offense level 25, the court determined that McCormick's Guideline sentencing range was 84-105 months. *Id.* at 27. The court noted that it was troubled by the disparity in sentencing between McCormick and his accomplice, Beaman, who served no more than

---

[1]Under Nebraska sentencing guidelines, a defendant would be expected to serve one-half of the sentence.

12 months in state custody and had already been released from custody at the time of the resentencing.  *Id.* at 28-31.  Noting that the defendant would benefit from the Bureau of Prison's residential drug abuse program, the court determined that McCormick should be sentenced to 48 months' imprisonment, to ensure that he would be eligible to participate in the program.  *Id.* at 32.

Both McCormick and the government appealed the sentence.  McCormick argued that the sentence was not reasonable and the government argued that the court had improperly considered the disparity between federal and state sentences in determining McCormick's sentence.  The government did not appeal the court's downward departure for overrepresentation of criminal history category.  At oral argument, the prosecutor requested that the Appeals Court enter an order on remand precluding the court's consideration of defendant's cooperation or any other bases for departure.  The Eighth Circuit found that this court "lacked the authority to vary downward based on a disparity between McCormick's federal sentence and his accomplice's state court sentence and therefore gave significant weight to an improper factor."  Filing No. 73-1; *United States v. McCormick,* 474 F.3d 1012, 1014 (8th Cir. 2006).  It remanded for resentencing consistent with its opinion, but did not remand with specific instructions.[2]  *Id.*

In preparation for the second resentencing, the Probation Office revised its Presentence Investigation Report (hereinafter, "Second Revised PSR").  Filing No. 85.  It again determined that McCormick's total offense level was 25, and criminal history category

---

[2]An appellate court has the option of remanding for either a full resentencing or one based solely on the existing record.  *United States v. Otey,* — F.3d —, —, 2008 WL 108852, *2 (8th Cir. Jan. 11, 2008).  A remand without limiting instructions permits the district court to "hear any relevant evidence on any issue that it could have heard at the first hearing.  *Id.*

was V, resulting in a Guideline sentencing range of 100 to 125 months. *Id.* at 19. At the second resentencing hearing, McCormick admitted that he had entered a plea of guilty to an outstanding state court aggravated misdemeanor charge while in prison, resulting in the assessment of an additional criminal history point. McCormick again argued that, even with the additional point, criminal history category V overstated his criminal history category. McCormick also argued that the court should consider his cooperation in determining his sentence.

## II.  LAW

### A.  Advisory Nature of Guidelines

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-227. In the remedial portion of the opinion, the Supreme Court determined that the appropriate cure was to modify the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. As a result, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. —, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer to be tied to

the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a)). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring) (noting that "any thumb on the scales," indicating that the "the Guidelines must be followed even where the district court's application of the § 3553(a) factors is entirely reasonable" would violate the Sixth Amendment because "the 'advisory' Guidelines would, over a large expanse of their application, *entitle* the defendant to a lesser sentence but for the presence of certain additional facts found by judge rather than jury") (emphasis in original).

Under the Sentencing Reform Act, as modified by *Booker,* judges are required "to take account of the Guidelines together with other sentencing goals" when fashioning a defendant's sentence. *Booker,* 543 U.S. at 261. Accordingly, "while the statute still requires a court to give respectful consideration to the Guidelines," courts are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-46).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.* (*quoting* 18 U.S.C. § 3553(a)). The statutory goals of sentencing include the need to: "'reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Id. (quoting* 18 U.S.C. § 3553(a)(2)(A)-(C)). Under the statute, "in determining the appropriate sentence,

8

the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (*quoting* 18 U.S.C. § 3553 (a)(1), (4)-(6)). The court must also consider the need to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(C)-(D).

## B.   Guideline Calculation - Departures

As the Supreme Court recently clarified in *Gall*, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall*, 552 U.S. at —, 128 S. Ct. at 596 (stating "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"). Under the Guidelines, certain factors are either prohibited, favored, or disfavored as grounds for a departure from the Guidelines sentencing range. *See* U.S.S.G. §§ 5K2.0, 5K2.1-5K2.24. In calculating the applicable Guidelines range, the sentencing court has authority to grant a downward departure in "cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3 (p.s.); *see also* U.S.S.G. § 4A1.1, comment., (backg'd.); *United States v. Senior,* 935 F.2d 149, 150-51 (8th Cir. 1991)

(affirming downward departure raised by court on its own motion).[3]   The court has no authority to depart for substantial assistance under U.S.S.G. § 5K1.1 in the absence of a government motion.[4]   *See, e.g., United States v. Vasquez,* 433 F.3d 666, 670 (8th Cir. 2006).   Because the Sentencing Commission accounted for ordinary post-offense rehabilitation in providing an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, a defendant's rehabilitation must be exceptional enough to be atypical in order to warrant a departure on that basis.   *See United States v. Rogers*, 400 F.3d 640 (8th Cir. 2005); *United States v. Chapman,* 356 F.3d 843, 849 (8th Cir. 2004) (holding that "atypical post-offense rehabilitation can by itself be the basis for a departure under § 5K2.0."); *United States v. De Shon,* 183 F.3d 888, 890 (8th Cir. 1999) (affirming departure on a showing that the defendant's "life had changed completely and he is now a different person.").   However, "[p]ost-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing defendant for that offense."   U.S.S.G. § 5K2.19, p.s.; *United States v. Hasan,* 245 F.3d 682, 686 (8th Cir. 2001).

---

[3]In departing downward under U.S.S.G. § 4A1.3, the court considers the historical facts of a defendant's criminal career, including his age when he committed the offenses, the proximity in time of the convictions, and "the state's assessment of the seriousness of [defendant's] crimes as reflected by the state courts' handling of sentencing." *Senior,* 935 F.3d at 151.   In departing, the court should apply the Guidelines range that would have applied absent the overstatement of his criminal history.   *Id.*

[4]The Sentencing Commission itself has recognized that "factors associated with either the making of a § 5K1.1 motion and/or the magnitude of the departure were not consistent with the principles of equity." United States Sentencing Commission, *Substantial Assistance: An Empirical Yardstick Gauging Equity in Current Federal Policy and Practice* at 21 (Jan. 1998), available at http://www.ussc.gov/research.htm; *see also* United States Sentencing Commission, *Fifteen Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* (hereinafter, "Fifteen-year Assessment") at 141 ("several lines of evidence suggest that uneven charging and plea bargaining remain a source of unwarranted sentencing disparity"); 103 ("[r]ates of substantial assistance departures vary widely among the districts") (Nov. 2004) *available at* http://www.ussc.gov/research.htm.

### C.   Section 3553(a)

Once the district court calculates the advisory Guidelines range, including departures, it "may then impose a sentence outside the range in order to 'tailor the sentence in light of the other statutory concerns' in § 3553(a)." *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-46).   The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented."   *Gall,* 552 U.S. at —, 128 S. Ct. at 597.   If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.   *Id.*   The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors under *Booker*. *United States v. Lazenby,* 439 F.3d 928, 933 (8th Cir. 2006); *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006) (recognizing that "pre-*Booker* departures and post-*Booker* variances are not the same" and that there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone").   Also, rehabilitation may be entitled to some

11

weight in this analysis as long as it does not "trump all the other considerations listed in § 3553(a)." *United States v. Medearis,* 451 F.3d 918, 921 (8th Cir. 2006).

The existence of unwarranted sentence disparities between federal defendants who have been found guilty of similar conduct is another circumstance that will support a nonguidelines sentence. *See United States v. Krutsinger,* 449 F.3d 827, 830 (8th Cir. 2006) (noting that similarly-situated or nearly-identical individuals who commit the same crime and participate in the same conspiracy should not be subjected to widely varying sentences due to a mere "happenstance in timing" of indictments or plea agreements); *Lazenby,* 439 F.3d at 933 (noting that *Booker* gives district courts the discretion to cure an injustice such as that caused by co-defendant stipulations to differing quantities of drugs that are not supported by the facts). However, "'[t]he District Court [is] neither required nor permitted under § 3553(a)(6) to consider a potential federal/state sentencing disparity in imposing [a] sentence.'" *McCormick,* 474 F.3d at 1014 *(quoting United States v. Jeremiah,* 446 F.3d 805, 806-07 (8th Cir. 2006)).

Congress established the Sentencing Commission "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (noting key role preserved for the Sentencing Commission); *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464 (2007). In that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that "even though the Guidelines are advisory rather than

mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").[5]

However, when Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465 (2007)); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence, most notably, those for drug offenses).[6]  The Commission itself acknowledges that "[t]he frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress."  United States Sentencing Commission, *Fifteen Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice*

---

[5]The Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* Fifteen-year Assessment 11-13.  Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines.  *See id.* at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.  Based on sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range.  Fifteen-Year Assessment at 14.

[6]The Commission departed from data on past sentencing practices in setting offense levels for drug trafficking crimes for policy reasons and because weight-driven statutory mandatory minima dictated lengthy sentences for drug-trafficking crimes.  *Id.* at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 566.  Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574.

*System is Achieving the Goals of Sentencing Reform* at 73 (Nov. 2004) (hereinafter, "Fifteen-year Assessment").

In cases involving application of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575.

### III.  ANALYSIS

#### A.  Guideline Calculation

The court finds that McCormick's base offense level under the Guidelines is 28.  The parties agree to a three-level adjustment for acceptance of responsibility, resulting in a total offense level of 25.  The court further finds that McCormick's criminal history is based on convictions for relatively minor offenses such as driving while barred.  Those convictions, as well as his felony conviction for drug possession, are related to McCormick's long-standing addiction.  For the reasons stated on the record at the first resentencing hearing, this court sustained McCormick's motion for downward departure for overstatement of criminal history.  The government did not appeal that determination.  The assessment of an additional criminal history point against McCormick does not change the court's analysis.  Accordingly, the court again finds that McCormick's criminal history category should be IV.  A category of V overstates his criminal history.  In this court's experience, criminals in criminal history category V have generally committed crimes that involve violence, substantial quantities of drugs, use of weapons or an escalating pattern of dangerous behavior.  McCormick's criminal history involves none of those things.  Before his conviction

14

for this offense, McCormick's longest sentence was six months.  The court again finds that defendant's motion for downward departure for overstatement of criminal history should be granted.

Under the Guidelines, the court is not authorized to depart from the Guidelines range in the absence of a government motion.  Similarly, the court cannot depart for either post-offense rehabilitation or for the disparity in the sentence imposed on McCormick's accomplice in state court.  Accordingly, the court finds that McCormick's Guideline sentencing range, at offense level 25 and criminal history category IV, is 84 to 105 months.

## B.  Section 3553(a) Factors

### 1.  The Nature and Seriousness of Offense

In considering the nature of the offense, the court first notes that the offense of possession of precursor chemicals is less serious than possession of drugs, especially when there is no indication that the defendant is engaged in or closely connected to the manufacture of the illegal substance.  The court notes that the evidence is essentially undisputed that the defendant purchased pseudoephedrine to provide to Beaman in exchange for methamphetamine to satisfy his addiction.  Although the evidence indicates that Beaman was the manufacturer and supplier of methamphetamine, McCormick is treated under the Guidelines as if he were the manufacturer and supplier, as a result of his agreement to be held responsible for the full quantity of pseudoephedrine seized from the van.  McCormick entered into the plea agreement before the transformation in criminal sentencing brought about by *Blakely/Booker*, and now *Gall/Kimbrough*, line of cases.  His options in negotiating a plea agreement were limited at that time.  The court is cognizant in assessing the nature and circumstances of the offense that there is essentially no dispute

15

that McCormick is less culpable than Beaman.  Notably, McCormick was not charged with conspiracy to manufacture methamphetamine.  Under the circumstances of this case, the Guidelines provide no mechanism to account for McCormick's relatively low level of involvement.

The seriousness of the offense is further attenuated by the fact that the conduct occurred a number of years ago in a different methamphetamine manufacturing and trafficking environment.  There is no evidence that the defendant's activity was wide-ranging or large-scale or that it continued over any extended period of time.  Also, in considering the nature to the offense, the court takes into account the fact that the motivation for the crime was defendant's addiction.

The court also considers McCormick's cooperation in connection with the nature of the offense.  The government acknowledges the truthfulness of McCormick's information.  Although there has been no showing of impropriety or bad faith by the government, the rationale behind its failure to move for a substantial assistance reduction is questionable.  This court is reluctant to sentence an admittedly less-culpable defendant to a lengthy term of imprisonment merely because his confession to the crime made him an easy prospect for conviction as compared to the others who perpetrated the same or greater crime.  McCormick's guilty plea was given in consideration of the government's consideration of a sentence reduction.  Although discretionary under the Guidelines, such "consideration" contemplates that the government will operate in good faith and will not withhold a motion for reduction for an arbitrary reason.[7]  In the context of this case, the court finds that it would

---

[7]The court is troubled by the government's offer of a "cooperation agreement" to the defendant in this case.  At the time it offered the agreement to McCormick, it knew or should have known that Beaman would not be prosecuted in federal court, and that any information that McCormick could furnish would be of little

be unfair and inequitable for this defendant to bear the brunt of the disparities created by prosecutorial charging practices. It is clear that the defendant furnished information that, but for circumstances beyond the defendant's control, would have assisted the government.[8]

In this court's experience, a typical defendant generally gets a reduction of 50 percent from the Guidelines range for substantial assistance. *See, e.g.,* The United States Sentencing Commission Special Post-Booker Coding Project: Information for All Cases: Data Extraction as of February 1, 2006 (Feb. 14, 2006), *available at* http://www.ussc.gov/bf.htm ("Coding Project Report") (finding that data shows that the "median percent decrease from guideline minimum" for substantial assistance cases in all offense categories is 49.9 percent and the "median percent decrease from guideline minimum" for substantial assistance cases involving drug-trafficking offenses is 45.8 percent). Accordingly, the court finds in consideration of the nature of the offense that the imposition of a sentence of 48 months is appropriate.

### 2.   History and Characteristics of the defendant

The defendant's history is defined by his longstanding addiction. McCormick is now forty-six years old. McCormick has a long history of drug abuse and addiction. As noted above, his criminal history involves generally minor offenses that can usually be attributable to addiction or alcohol abuse. The court finds that McCormick's rehabilitation should be considered in connection with his history and characteristics. The court is sadly familiar with

value. The consideration for its agreement was illusory, and McCormick gained nothing by entering a plea to the full quantity of pseudoephedrine.

[8]The parties agree that McCormick's proffer would have satisfied the requirement under the safety-valve, if that provision were applicable.

the difficulty of overcoming an addiction to methamphetamine.  McCormick has now completed several stringent drug treatment programs, and has complied with all conditions of home confinement and subsequent supervised release.  The court's sentence of 48 months was designed to afford McCormick the opportunity to obtain intensive drug treatment while in prison.  It has served that purpose.  He has now served his sentence and has been released from prison.  He is on supervised release and will be subject to strict reporting and drug testing requirements for the next three years.  The court sees no benefit to further incarceration of the defendant.

In making this finding, the court also takes into account the sequence and timing of McCormick's conviction and sentencing, appeals, and resentencings, occurring as they did in the midst of the evolution of federal sentencing law brought about by the Supreme Court's recent cases.  While this action wound its way through the courts, McCormick served his sentence, completed drug treatment, was released from prison, and returned to society as a productive citizen.  To order that McCormick return to prison at his time would deny him the benefit of the early release that he earned through successful completion of the Bureau of Prisons' rigorous addiction recovery program.  A return to prison would damage McCormick's prospects of maintaining his sobriety.  The court is also mindful of the significant strain that the uncertainty with respect to the length of his sentence has been on McCormick.  Further, the court notes that McCormick continues to be under supervision by the court.

### 3.  Sentencing range established by the Guidelines

The Guidelines ranges of imprisonment for possession of precursor chemicals were, like the drug-trafficking Guidelines, determined with reference to statutory directives and not

18

grounded in empirical data. Accordingly, the court affords less deference to the Guidelines range than it would if the Guidelines were the result of the exercise of the Sentencing Commission's institutional strength. Because the drug-trafficking Guidelines, and consequently precursor chemicals Guidelines, are pegged to federal statutory mandatory minima, they are not a reasonable approximation of a reasonable sentence for the offense.[9] The court finds that a sentence of 48 months would more closely approximate the sentencing range that would have been imposed on this defendant had the guideline been empirically determined and not driven by statutory mandatory minimum sentences.

### 4. Need to protect public from further crimes of the defendant

The court finds there is little need to protect the public from further crimes of the defendant for two reasons. First, statutory enactments restricting precursor chemical purchases have made it difficult to obtain precursor chemicals and have drastically altered the methamphetamine manufacturing and trafficking trade. As a result of these changed circumstances, there is less need to deter others from the conduct or to protect the public from further crimes of this nature by defendant. The court finds little deterrence value would be attained by any longer sentence of incarceration than McCormick has already served.

---

[9]Linking the Guidelines ranges to the statutory minima accounts for the large discrepancy between state and federal sentences for the same crime. Although the Eighth Circuit determined on appeal that it is not appropriate, either in making a Guidelines calculation or determining a variance, to consider a state court sentence in connection with the need to avoid unwarranted disparities between defendants who commit similar crimes under 18 U.S.C. § 3553(a)(6), that is not to say that the court should disregard such differences in determining the weight to give the Guidelines in tailoring a sentence in light of § 3553's other statutory sentencing concerns.

Whatever the continuing validity of the Eighth Circuit's precedent on this issue in the wake of *Gall* and *Kimbrough*, this court accedes to the Eighth Circuit's mandate in this case and does not rely on the disparity between McCormick's Guidelines sentencing range and his accomplices' treatment in state court in making its sentencing determination. The court notes the difference only to explain the rationale for its determination that defendant's cooperation should be considered in assessing the nature of the offense and in determining the weight to be afforded the advisory Guidelines range in making the 3553(a) determination.

Second, because he has successfully completed three rigorous drug-treatment programs and has overcome his addiction, McCormick has a low potential for recidivism. He appears to appreciate the seriousness of his offense.

> **5.    Need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

The 48-month sentence that McCormick has already served has given McCormick the benefit of participation in the Bureau of Prisons 500-hour addiction treatment program. McCormick successfully completed that program while incarcerated and has complied with his conditions of release.  Earlier, he completed drug treatment at NOVA in Omaha and at Oxford House in Council Bluffs.  He presently attends AA/NA meetings regularly and is subject to drug testing as part of his supervision.  He is also  employed and is participating in counseling with his family. The court finds the stringent conditions imposed on McCormick during his period of supervision will adequately ensure his continued sobriety and afford him continued treatment.

## IV.  CONCLUSION

For the reasons set forth above, the court finds a sentence outside the Guidelines is warranted. A deviation from the low end of the advisory Guidelines range of 84 months to a sentence of 48 months is justified in consideration of the § 3553(a) factors.  The facts that justify an outside Guidelines sentence are sufficiently compelling to support this degree of a variance.  The court finds this sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.  Given that the benefit to

society of a longer sentence of imprisonment would be negligible, any benefit is outweighed by the harm it would do to McCormick and to his prospects of remaining a productive member of society.  Accordingly, the court finds a sentence of 48 months of incarceration adequately addresses the sentencing objectives outlined in Section 3553 and will "impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes." 18 U.S.C. § 3553(a).

An amended judgment and commitment and statement of reasons in accordance with this sentencing memorandum will issue this date.

DATED this 29th day of January, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge

21